UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STATE OF IDAHO, a sovereign State of the United States<br><br>　　　　　　Plaintiff,<br>　v.<br><br>COEUR D'ALENE TRIBE, a federally recognized Indian tribe,<br><br>　　　　　　Defendant. | Case No. 2:14-cv-000170-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it defendant Coeur d'Alene Tribe's Motion to Dismiss (Dkt. 15) as well as plaintiff's Motion for a Temporary Restraining Order and for a Preliminary Injunction (Dkts. 3, 4). For the reasons explained below, the Court will stay this lawsuit based on the Tribe's argument that the parties' Class III Gaming Compact requires arbitration.

## BACKGROUND

In early May 2014, the Coeur d'Alene Tribe began conducting Texas Hold 'em tournaments at the Coeur d'Alene Casino Resort Hotel. Texas Hold 'em is a poker game. The State of Idaho immediately sought an injunction prohibiting the Tribe from

conducting the tournaments. The State argues that the Tribe is violating the parties' Class III Gaming Compact.

The Tribe responded with a motion to dismiss. Among other things, the Tribe says the parties should not be before this Court because Article 21 of the Gaming Compact requires arbitration.

The relevant parts of Article 21 provide as follows:

**Article 21. Dispute Resolution.**

. . .

21.2 Except as provided in Article 6[1], if either party believes that the other party has failed to comply with any requirement of this Compact, it shall invoke the following procedure:

.1 The party asserting the non-compliance shall serve written notice on the other party. The notice shall identify the specific statutory, regulatory or Compact provision alleged to have been violated and shall specify the factual basis for the alleged noncompliance. The State and the Tribe shall thereafter meet within ten (10) working days in an effort to resolve the dispute.

.2 *If the dispute is not resolved to the satisfaction of the parties within sixty (60) days after service of the notice set forth in Article 21.2.1, either party may pursue binding arbitration to enforce or resolve disputes concerning the provisions of this Compact.*

21.3 Except as provided in Article 6, both parties consent to binding arbitration as provided herein. *Once a party has given notice of intent to pursue binding arbitration and the notice has been sent to the non-complaining party, the matter in controversy may not be litigated in court proceedings.* A panel of three (3) arbitrators shall be selected by the American Arbitration Association. . . . .

---

[1] Neither party has argued that Article 6 applies here.

> 21.4 Nothing in this Article 21 shall be construed to preclude, limit or restrict the ability of the parties to pursue, by mutual agreement, alternative methods of dispute resolution, whether binding or non-binding, including, but not limited to, arbitration, mediation, mini-trials or judicial resolution firms; provided, however, that neither party is under any obligation to agree to such alternative methods of dispute resolution.

*1992 Class III Gaming Compact ("Compact" hereafter),* Dkt. 3-3, at 27-28 (emphasis added). As discussed below, the State violated Article 21 by filing this lawsuit.

## DISCUSSION

At the outset of this dispute, both parties acknowledged that Article 21 governs dispute-resolution procedures.[2] The Court concurs, and is not persuaded by any suggestion that Article 21 may not apply. Rather, as the Court sees it, the key point of contention is the parties' disagreement over what Article 21 says. In a nutshell, the Tribe says Article 21 requires arbitration unless the parties mutually agree to some other form of dispute resolution. The State says arbitration is optional under Article 21.

Preliminarily, the Court has jurisdiction to enforce promises made in Article 21 of the Compact. In *Cabazon Bank of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997), the Ninth Circuit held that the Indian Gaming Regulatory Act of 1988 "necessarily confers jurisdiction onto federal courts to enforce Tribal-State compacts and the agreements contained therein."

As for the legal standards governing enforcement of an arbitration agreement, the

---

[2] *See May 1 Letter from Jeffrey R. Anderson to Hon Chief Allan*, Dkt. 3-9, at 2 ("The State hereby gives written notice under Article 21.2 of the Tribe's non-compliance with the Compact."); *May 2, 2014 Letter from Allan to Anderson*, Dkt. 15-3, at 2 (The Tribe "believes that Article 21 of the Compact is the required mechanism to resolve this type of dispute, . . . .").

Tribe has pointed out that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Reply*, Dkt. 33, at 9 (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). But the presumption in favor of arbitrability does not always apply. Rather, a court "must first decide whether the parties are contesting the *existence* or the *scope* of an arbitration agreement. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014). "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply. . . . The presumption in favor of arbitrability applies only where the *scope* of the agreement is ambiguous as to the dispute at hand, . . . ." *Id.*

As noted above, both parties have stated that Article 21 governs this dispute, but they disagree as to whether it requires arbitration. Thus, the dispute is not about the *scope* of Article 21; it is about whether Article 21 is, in fact, an *arbitration* agreement, as opposed to an agreement requiring or allowing other forms of dispute resolution. Thus, the Court will not apply the presumption in favor of arbitrability in first determining whether Article 21 requires arbitration. Instead, the Court will apply general principles of federal contract law in interpreting Article 21. *See Cachil Dehe Band of Wintun Indians v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010) ("General principles of federal contract law govern the Compacts, which were entered pursuant to IGRA."). Practically, speaking, however, the Court will look to Idaho contract law, as it has not discerned any difference between Idaho contract law and federal contract law. *See id.; Idaho v. Shoshone-Bannock Tribes,* 465 F.3d 1095, 1098 (9th Cir. 2006) (employing Idaho contract law to interpret a tribal-state compact that was to be "construed in accordance

with the laws of the United States").

Under Idaho law, the determination of a contract's meaning and legal effect are questions of law to be decided by the court where the contract is clear and unambiguous. *Galaxy Outdoor Advertising Inc. v. Idaho Transp. Dep't*, 710 P.2d 602 (Idaho 1985). If a contract is ambiguous, however, the interpretation of the document presents a question of fact which focuses upon the intent of the parties. *Ramco v. H-K Contractors, Inc.*, 794 P.2d 1381, 1383 (Idaho 1990). "A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical." *Potlatch Educ. Ass'n v. Potlatch Sch. Dist.*, 226 P.3d 1277, 1280 (Idaho 2010).

In this case, the Court concludes, as a matter of law, that the Gaming Compact unambiguously prohibits the State from suing the Tribe within the first 60 days after an Article 21 notice has been sent. That 60-day window effectively functions as a holding period. At the conclusion of the 60-day period, either side may force a binding arbitration – to the exclusion of a lawsuit.

The language of Article 21 – quoted at length above – lays out this procedure as follows: First, Article 21.2.1 says that if either party believes the other has violated the Compact, then the party asserting non-compliance must provide a written notice to the other side. The State provided this notice on May 1, 2014. *See May 1, 2014 Letter from Jeffrey R. Anderson to Hon. Chief Allan*, Dkt. 3-9. ("The State hereby gives written notice under Article 21.2 of the Tribe's noncompliance with the Compact.").

The May 1 notice triggered two different time periods: (1) a ten-day period in which the parties were required to meet in an effort to resolve the dispute; and (2) a 60-

day period. The purpose of the 60-day period is not expressly stated in the Compact, but Article 21.2.2 says that if the parties are unable to resolve their disputes within that 60-day period, then either side may force the other into binding arbitration. Impliedly, then, the 60-day period serves as a limited window of time in which the parties can attempt to resolve their differences before one side has the opportunity to force the other into binding arbitration.

Both sides have acknowledged that this is how the 60-day period is meant to function. For example, the States' May 1, 2014 notice to the Tribe acknowledges that neither side can force an arbitration until the conclusion of the 60-day period. The notice does not say that in so many words, but it plainly implies it by saying that the State would be willing to waive that 60-day period so that the parties could proceed directly to arbitration. *See May 1, 2014 Letter from Anderson to Allan,* Dkt. 3-9 ("The State is willing to waive the . . . *60-day period specified in Article 21.2.2, and proceed immediately to binding arbitration* . . . if the Tribe confirms immediately upon receipt of this letter that it will not initiate the proposed poker gambling until the completion of the arbitration process.") (emphasis added); *see also May 2, 2014 Letter from Allan to Anderson,* Dkt. 15-3 (also expressing a willingness to waive the 60-day period and proceed directly to arbitration).

In any event, after laying out this 60-day holding period, the next part of Article 21 goes on to provide as follows:

> Except as provided in Article 6, both parties consent to binding arbitration as provided herein. *Once a party has given notice of intent to pursue*

> *binding arbitration and the notice has been sent to the non-complaining party, the matter in controversy may not be litigated in court proceedings.*"

*Compact*, Dkt. 3-3, Art. 21.3, at 27-28 (emphasis added). That second sentence – the one referring to court proceedings – suggests that if neither side compels arbitration, then the parties may litigate their disputes. But given the 60-day holding period, the parties logically cannot sue each other during *those* 60 days.

The State, however, insists that after it sent the written notice of non-compliance, it had every right to immediately sue the Tribe – without regard to the 60-day period. And that is exactly what the State did. It notified the Tribe of non-compliance on May 1, 2014 and filed this lawsuit the very next day. Further, the State says that because it raced into Court so quickly, the Tribe has forever lost any ability to force a binding arbitration. As the State puts it, "Article 21.3 did not foreclose Idaho from electing that remedial course [a lawsuit] and, having chosen, to pursue it to conclusion. This matter, in other words, may "be litigated in court proceedings" because it commenced before either party gave and sent 'notice of intent to pursue binding arbitration.'" *Combined Reply*, Dkt. 25, at 10.

This is not a reasonable interpretation of Article 21. If accepted, it would thoroughly eviscerate the procedure the parties put in place to make binding arbitration the agreed-upon method of dispute resolution. Under the State's view, if the parties are within the 60-day, post-notice period, one party could always unilaterally decide against arbitrating and in favor of litigating simply by racing to court.

The Court finds that Article 21 of the Compact unambiguously prohibits the State

from filing a lawsuit within the 60-day period. The State's position to the contrary is unreasonable, and thus fails to create any ambiguity that would prevent the Court from interpreting the Compact as a matter of law. *See Potlatch,* 226 P.3d at 1280 ("A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical.").

At this point, we are within the 60-day period. By the Court's calculation, which assumes the Tribe was served with the notice on May 1, the 60-day period does not conclude until June 30. So the Tribe has every right under the Compact to wait until June 30 and then force a binding arbitration. The Court is not persuaded by the Tribe's argument that both sides have already waived the 60-day period and commenced arbitration procedures. Rather, the State said it was willing to waive the 60-day period and proceed to arbitration if – and only if – the Tribe agreed not to conduct poker tournaments. The Tribe expressed a willingness to waive the 60-day period, but did not agree to refrain from holding the poker tournaments. The upshot is that the 60-day period has not been waived and neither side has pursued binding arbitration. The Court will therefore enter an order staying this lawsuit to give the Tribe an opportunity to compel arbitration.

Finally, the Court notes that it will refrain from rendering an opinion as to what happens at the conclusion of the 60-day period if the Tribe does not force a binding arbitration. Based on its position thus far, the State would surely argue that it could proceed with its lawsuit. The Tribe, on the other hand, says a lawsuit absolutely cannot be filed unless the parties mutually agree to resolve their dispute in Court. The Tribe

relies on Article 21.4, which says the parties may agree to "alternative methods of dispute resolution, whether binding or non-binding, . . . ." *Compact*, Dkt. 3-3, Art. 21.4, at 28. That dispute, however, is for another day. For now, the Court will stay the lawsuit because the parties are within the 60-day period in which the Compact unambiguously prohibits the State from filing this lawsuit.

## ORDER

1. Plaintiff's motions for injunctive relief (Dkts. 3, 4) are **DENIED AS MOOT**.

2. Defendant's Motion to Dismiss (Dkt. 15) is **DENIED in part** and **GRANTED in part**. Defendant's request to compel arbitration is **GRANTED** to the extent that the Court will **STAY** this litigation until the parties have complied with Article 21 of the Gaming Compact. The motion is **DENIED** in all other respects, as explained above.

3. The parties are ordered to file a joint report no later than July 7, 2014 regarding the status of proceedings under Article 21 of the Gaming Compact.

DATED: June 23, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court