UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STATE OF IDAHO, a sovereign State of the United States<br><br>Plaintiff,<br>v.<br><br>COEUR D'ALENE TRIBE, a federally recognized Indian tribe,<br><br>Defendant. | Case No. 2:14-cv-000170-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Defendant Coeur d'Alene Tribe's Motion for Stay of Preliminary Injunction Pending Appeal (Dkt. 42). For the reasons explained below, the Court will deny the motion.

## BACKGROUND

In early May 2014, the Coeur d'Alene Tribe began conducting Texas Hold 'em tournaments at the Coeur d'Alene Casino. Texas Hold 'em is a poker game. Idaho has expressly prohibited all forms of gambling other than: (1) a state lottery; (2) pari-mutuel betting on horse, dog, and mule races; and (3) certain bingo and raffle games. Shortly after the Tribe began conducting the tournaments, the State sued the Tribe in this Court,

seeking to enjoin the tournaments. The State contends that poker is a prohibited form of gambling in Idaho and, further, that the Tribe is violating the parties' Class III Gaming Compact by conducting the poker tournaments. The Tribe, however, says that (1) Texas Hold 'em does not fit Idaho's definition of "gambling," (2) the parties' Compact does not address Texas Hold 'em; and (3) this Court lacks subject-matter jurisdiction over this dispute.

On September 5, 2014, this Court determined it had jurisdiction and issued an injunction preventing the Tribe from conducting the Texas Hold 'em tournaments. The Tribe now moves to stay this injunction pending appeal to the Ninth Circuit.

## THE LEGAL STANDARD

Federal Rule of Civil Procedure 62(c) [1] authorizes district courts to stay equitable or injunctive relief during the pendency of an appeal. Rule 62(c), however, "grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it 'does not restore jurisdiction to the district court to adjudicate anew the merits of the case.' Thus, any action taken pursuant to Rule 62(c) 'may not materially alter the status of the case on appeal.'" *Natural Resources Defense Council, Inc. v. S.W. Marine Inc.*, 242 F.3d 1163 (9th Cir. 2001) (all internal citation omitted).

---

[1] Federal Rule of Civil Procedure 62(c) provides, in relevant part, as follows:

> **Injunction Pending an Appeal**. While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

In determining whether to grant a stay under Rule 62(c), courts consider the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *See also Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012). This standard presents a continuum. *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1119 (9th Cir. 2008). At one end of the continuum, if there is a "probability" or "strong likelihood" of success on the merits of the appeal, a relatively low standard of hardship is sufficient. *Id*. At the other end, if the balance of hardships tips sharply in favor of the party seeking the stay, a relatively low standard of likelihood of success on the merits is sufficient. *Id.*

**1.  Strong Likelihood of Success on the Merits**

The Tribe outlines three reasons why it will be able to make a strong showing that it will likely succeed on the merits of this action. First, the Tribe says it will succeed on the merits because the only way to resolve this dispute is through arbitration – not litigation. Second, the Tribe says the Court lacks subject matter jurisdiction over this dispute. Third, and finally, the Tribe says it is entitled to offer Texas Hold 'em as a Class II game under the Indian Gaming Regulatory Act. The Court will address each argument in turn.

### A. The Tribe Waived Its Right to Arbitrate

The Court is not persuaded by the Tribe's argument that, at this point in the proceedings, arbitration is the exclusive method of dispute resolution. The Tribe contends that it has always intended for this dispute to be arbitrated, but that the Court misinterpreted its intentions. The Tribe's conduct within this lawsuit seriously undermines this contention.

The State sued the Tribe on May 2, 2014. The Tribe responded with a motion to dismiss, arguing that the dispute should be arbitrated. In addition to invoking an arbitration clause in the parties' Class III Gaming Compact, however, the Tribe also tackled the substantive issues. The Tribe's central argument was that under relevant state and federal law, the Tribe was entitled to offer Texas Hold 'em tournaments at the Couer d'Alene Casino. *See* Dkt. 15-1.

On June 23, 2014, the Court issued a narrow ruling, restricted to the Tribe's invocation of the arbitration clause. *See* Dkt. 35. The Court concluded that the State had violated the arbitration clause by suing the Tribe before the conclusion of a 60-day window then in effect.[2] The Court relied on the following arbitration provisions within the Compact:

---

[2] This sixty-day window is explained further in the Court's June 23, 2014 ruling. *See* Dkt. 35.

**Article 21. Dispute Resolution.**

. . .

21.2   Except as provided in Article 6[3], if either party believes that the other party has failed to comply with any requirement of this Compact, it shall invoke the following procedure:

    .1   The party asserting the non-compliance shall serve written notice on the other party. The notice shall identify the specific statutory, regulatory or Compact provision alleged to have been violated and shall specify the factual basis for the alleged noncompliance. The State and the Tribe shall thereafter meet within ten (10) working days in an effort to resolve the dispute.

    .2   ***If the dispute is not resolved to the satisfaction of the parties within sixty (60) days after service of the notice set forth in Article 21.2.1, either party may pursue binding arbitration to enforce or resolve disputes concerning the provisions of this Compact.***

21.3   Except as provided in Article 6, both parties consent to binding arbitration as provided herein. ***Once a party has given notice of intent to pursue binding arbitration and the notice has been sent to the non-complaining party, the matter in controversy may not be litigated in court proceedings.*** A panel of three (3) arbitrators shall be selected by the American Arbitration Association. . . . .

21.4   Nothing in this Article 21 shall be construed to preclude, limit or restrict the ability of the parties to pursue, by mutual agreement, alternative methods of dispute resolution, whether binding or non-binding, including, but not limited to, arbitration, mediation, mini-trials or judicial resolution firms; provided, however, that neither party is under any obligation to agree to such alternative methods of dispute resolution.

*1992 Class III Gaming Compact ("Compact" hereafter),* Dkt. 3-3, at 27-28 (emphasis added).

---

[3] Neither party has argued that Article 6 applies here.

Given the Tribe's insistence that this matter must be arbitrated, the Court expected that at the conclusion of the 60-day period the Tribe would compel the State to arbitrate. The Tribe acknowledged it had such a right. In briefing the motion to dismiss, the Tribe said:

> If either party is dissatisfied at the close of the 60-day period, it "may pursue binding arbitration" without obtaining any further consent of the other party, as such consent was bargained for and explicitly provided for in the Compact. *In fact, the Tribe, itself, could invoke arbitration at the end of the 60-day period.*

*Reply in Support of Motion to Dismiss,* Dkt. 33, at 8 (emphasis added).

The Court agreed with the Tribe on this point, and stayed the ligation to give the Tribe a chance to compel arbitration.[4] The Court further ordered the parties to file a joint report as to the status of the proceedings under the Compact's arbitration provisions by no later than July 7, 2014. By that date, the 60-day period would have expired. The Court believed its June 23, 2014 ruling would end the litigation, given the Tribe's professed desire to arbitrate.

On July 7, 2014, however, the parties jointly informed the Court that "neither Plaintiff nor Defendant has requested arbitration pursuant to Article 21.2.2 of the 1992 Class III Gaming Compact concerning the dispute over poker gaming (Texas Hold 'em) at the Coeur d'Alene Casino Resort Hotel ***and therefore believe that disposition of the pending motion to dismiss . . . is appropriate***." *Joint Notice re Status of Dispute Resolution Process,* Dkt. 37, at 1-2 (emphasis added).

---

[4] When the Court issued this ruling, the 60-day period was still in effect.

Significantly, at that point in the proceedings, the remaining issues to be decided in the motion to dismiss were substantive. As the parties were well aware, if the Court was called upon to decide these issues, it would likely be deciding the merits of the case. In fact, at a hearing that took place well before the parties filed the joint report, the Court explained to the parties that in this particular case, deciding jurisdiction would basically require a decision on the merits.

Against this factual backdrop, when the parties filed their joint report, the Court concluded that both parties had decided they would prefer to litigate rather than arbitrate. After all, if the Tribe wanted an arbitrator to decide these substantive issues, it very easily could have compelled an arbitration. So, upon receiving the joint report, the Court proceeded to expend a significant amount of time and effort deciding the relatively complex issues raised in the motion to dismiss. Then, having determined jurisdiction, the Court decided the pending motions for injunctive relief. The Court issued a decision on these motions on September 5, 2014. *See* Dkt. 40.

Immediately after the Court issued this decision – which was unfavorable to the Tribe – the Tribe began insisting that it had never had any intention of litigating this dispute. Rather, the Tribe says the only way to resolve this dispute is through arbitration. The Tribe suggests that the onus is on the State to compel arbitration, as the State is the one alleging non-compliance with the Compact. The Tribe also accuses the State of "seeking to confuse the record" by suggesting that the Tribe was given a choice between arbitration and litigation. *See Reply*, Dkt. 50, at 3.

Tellingly, in advancing these arguments, the Tribe says nothing about the July 7, 2014 joint status report, where the State and the Tribe jointly said it would be appropriate for the Court to decide the pending motion to dismiss. And, as noted above, the motion to dismiss did not simply argue that the case should be dismissed due to an arbitration clause. That issue had been resolved. So the only issues remaining were heavy, issue-laden ones that went right to the heart of this case. In that context, if the Tribe believed the only way to resolve this dispute was through arbitration – and if the Tribe truly wanted to arbitrate – why did it push a court into issuing a ruling on the merits?

Under these circumstances, the Court concludes that the Tribe consented to litigate this matter and, as the State argues, the Tribe is now bound by this Court's September 5, 2014 ruling. The Tribe, on the other hand, insists it has not waived its right to arbitrate.

The Court recognizes that federal policy generally favors enforcing arbitration agreements. Nonetheless, courts may refuse to enforce an arbitration agreement on the ground that the party seeking enforcement has waived any such right. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758–59 (9th Cir. 1988). "A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990).

All three factors weigh in favor of finding a waiver. First, the Tribe plainly knew it had the right to compel arbitration at the conclusion of the 60-day period. This Court

issued a ruling stating that this was the case. Further, the Tribe explicitly acknowledged it had such a right.

Second, the Tribe acted inconsistently with this right by electing not to compel arbitration and, at the same time, convincing a court to decide the key, substantive issues raised by the State's lawsuit.

Third, and finally, the State will be prejudiced if it is compelled to arbitrate at this point in the game. Prejudice, in this context, "refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." 1 Martin B. Domke, Gabriel Wilner & Larry E. Edmonson, *Domke on Commercial Arbitration,* § 23:10 (footnote citations to cases omitted). The Tribe seeks to characterize this lawsuit as being in the very early stages, given that it has not yet filed an answer. But this is an unusual case, because the Court has been pushed deep into the merits of this litigation for the reasons discussed above. *See generally id.* ("the more involved a party becomes in litigation, the greater chance that prejudice to the other party will be found").

### B. The Tribe Violated the Parties' Class III Gaming Compact

The Tribe next argues it is likely to succeed on the merits because it has not violated the parties' Class III Gaming Compact. The Court already rejected this argument in a previous decision. *See Sept. 5, 2014 Order,* Dkt. 40, at 11-15.

### C. Texas Hold 'em is Prohibited by Idaho Law

Finally, the Tribe argues that it will succeed on the merits because Texas Hold 'em is authorized under Idaho law. Again, the Court rejected this argument in its previous decision. *See id.* at *Sept. 5, 2014 Order,* at 3-11.

### 2. The Public's Interest

The Court finds that the public's interest is furthered by keeping the injunction in place. The Tribe argues that the public's interest "[u]ndoubtedly . . . lies with respecting and implementing bargained-for contractual agreements, particularly when the contract at issue, the Tribal-State Gaming Compact, lies at the center of Congress' effort to balance the interest of tribes, states, and the federal government with respect to gaming on Indian lands." *Reply,* Dkt. 50, at 9. The Court agrees that upholding the Tribal-State Compact serves the public's interest. And, as explained further in its September 5, 2014 decision, the Court has concluded that the Tribe has violated that compact.

The Court also finds that the public's interest is furthered by upholding Idaho state law. The Tribe argues that state law is not at issue because "[o]nly federal and tribal law applies" on the Tribe's reservations. *Id.* at 9. But with respect to Class III gaming, the relevant provisions of the Indian Gaming Regulatory Act "confirm that Congress understood that it would be the Tribes and the States, not the federal government, who would be responsible for the regulation of Class III Indian gaming." *Colorado River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 383 F. Supp. 2d 123, 136 (D.D.C. 2005); *see also United States v. Santa Ynez Band of Chumash Mission Indians,* 983 F. Supp.

1317, 1326 (C.D. Cal. 1997) (observing that there is a substantial public interest in subjecting tribal Class III gaming to outside regulation).

The Tribe also argues that Texas Hold 'em is widely played throughout the state and, as such, the public's interest is not served by preventing the game from being played. But the fact that a law is allegedly routinely violated does not mean that an injunction upholding that law does not serve the public's interest. As the State has pointed out, if the public becomes dissatisfied with a particular law, the remedy lies with the legislature, not with the courts.

**3.      Balance of the Equities**

For the reasons explained in its earlier injunction order, the Court concludes that the State would be substantially injured if the injunction is stayed pending appeal. *See Sept. 5, 2014 Order,* Dkt. 40, at 22.

As for the Tribe's alleged irreparable injury, the Court cannot conclude that the balance of hardships tips in the Tribe's favor. The Tribe contends that if the injunction is left in place, "there will be immediate and irreparable injury to the Tribe's economy, self-sufficiency, and government." *Reply,* Dkt. 50, at 6. Regarding self-governance principles, the State points out that there are countervailing sovereignty issues that IGRA preserves. *See Response,* Dkt. 50, at 10.

Otherwise, the Tribe's effort to establish irreparable injury mainly involves economic harms. The Tribe says that if the injunction remains in place, the casino will lose revenues associated with the Texas Hold 'em tournaments, which, in turn, would negatively impact the Tribe's ability to fund various Tribal government programs.

Relatedly, the Tribe says that some casino employees might lose their jobs and apply for unemployment benefits. *See Reply,* Dkt. 50, at 7. The Court cannot find that these alleged harms outweigh the harm to the State if the injunction is stayed.

Finally, the Court will observe that preliminary injunction order in this case serves a key function of any injunction – which is to preserve the status quo pending a determination on the merits. *Dep't of Parks & Rec. v. Bazaar del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). The Tribe did not begin offering Texas Hold 'em tournaments until after the parties began disputing the legality of the tournaments. The State sued on May 2, 2014. It appears that Tribe began offering the tournaments a day earlier. Well before that time, however – and before the tournaments were being offered – the parties had been disputing the legality of Texas Hold 'em in a series of letters, and the State had indicated it would seek to enjoin the Tribe from offering the tournaments. *See, e.g.,* Dkt. 3-5 through 3-10.

The Ninth Circuit has defined "the status quo" as "not simply any situation before the filing of the lawsuit, but rather the last uncontested status that preceded the parties' controversy." *Id.* In this case, the last uncontested status that preceded the parties' controversy was that the Tribe was not offering Texas Hold 'em tournaments. The preliminary injunction preserves that state of affairs. *Cf. United States v. Santa Ynez Band of Chumash Mission Indians*, 983 F. Supp. 1317, 1326 n.16 (C.D. Cal. 1997) ("The court does not sympathize with the tribes' plight to the extent that they have increased their investment in Class III gaming after being put on notice that the United States planned to take action against them.").

# ORDER

**IT IS ORDERED that** Defendant's Motion to Stay (Dkt. 42) is **DENIED**.



DATED: September 18, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court