UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STATE OF IDAHO, a sovereign State of the United States<br><br>Plaintiff,<br><br>v.<br><br>COEUR D'ALENE TRIBE, a federally recognized Indian tribe<br><br>Defendant. | Case No. 2:14-cv-00170-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Defendant's Motion to Increase Security. Dkt. 49. Earlier, this Court granted an injunction in Plaintiff's favor, and ordered Plaintiff to post security in the amount of $20,000. *See* Dkt. 40. Defendant seeks to have the security increased to $200,000 per month. For the reasons set forth below, the Court will deny the motion.

## BACKGROUND

In early May 2014, the Coeur d'Alene Tribe began conducting Texas Hold'em tournaments at the Coeur d'Alene Casino. Shortly thereafter, the State of Idaho brought this action seeking to enjoin the Tribe from holding these tournaments, claiming that

poker is a prohibited form of gambling in Idaho, and that the Tribe violated the parties' Class III Gaming Compact by conducting the tournaments.

On September 5, 2014, the Court issued a Preliminary Injunction, enjoining the Tribe from holding Texas Hold'em tournaments, and ordering the State to post a security in the amount of $20,000. *September 5, 2014 Order*, Dkt. 40. The Court stated that the amount of the security could be increased, if necessary, based upon an appropriately filed motion by the Tribe supporting such an increase. *Id.* at 24. The Tribe responded with the pending motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65(c) provides:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

The security requirement serves two purposes: 1) assuring the enjoined party that it readily collect damages from the funds posted in the event that it was wrongfully enjoined, and 2) providing the plaintiff with notice of the maximum extent of its potential liability since the amount of the security is the limit of the damages the defendant can obtain for a wrongful injunction. *Continuum Co. Inc. v. Incepts,* 873 F.2d 801, 803 (5th Cir. 1989); *see also Washington Capitols Basketball Club, Inc. v. Barry*, 304 F. Supp. 1193, 1203 (N.D. Cal. 1969), *aff'd,* 419 F.2d 472 (9th Cir. 1969).

Determining the amount of the security is left largely to the discretion of the court. *Conn. General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir.

2003).  Because the amount of the security limits the recoverable damages for a party found to be wrongfully enjoined, the court should consider the potential incidental and consequential costs as well as the losses the party will suffer due to the injunction. 11A Fed. Prac. & Proc. Civ. § 2954 (3d ed.). The court may also consider the likelihood of success on the merits. *California ex rel. Van De Kamp v. Tahoe Reg. Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985) ("the likelihood of success on the merits, as found by the district court, tips in favor of a minimal bond or no bond at all").

The party seeking the bond has an obligation to present evidence that a bond is needed, so that the court is afforded an opportunity to exercise its discretion in setting the amount of the bond. *Conn. General Life Ins. Co.*, 321 F.3d at 883. The Court "is not required to order security in respect of claimed economic damages that are no more than speculative." *AB Electrolux v. Bermil Indus. Corp.*, 481 F.Supp.2d 325, 337 (S.D.N.Y. 2007); *Washington Capitols Basketball Club,* 304 F.Supp. at 1203 (rejecting security requested where the projected loss was highly speculative and unsupported by any factual showing).

## ANALYSIS

Here, the Tribe seeks a substantial increase to the security ordered by the Court, from a flat $20,000 to $200,000 per month. In support of this increase, the Tribe offered a declaration from the Chief Executive Officer of the Coeur d'Alene Casino & Resort stating that the casino expends $175,000 a month to pay 49 employees hired as a direct result of the Texas Hold'em tournaments. *Matheson Dec.* ¶ 12. The Tribe argues that it

may be forced to terminate these employees as a direct result of the injunction. *Id.* at ¶ 10. Additionally, the Tribe argues that proceeds from the Texas Hold'em tournaments had been used to support important tribal assistance programs, and that these the injunction will also affect revenues to other gaming operations, hotel occupancy, and retail sales. *Id.* at ¶¶ 6-7.

The Court is not persuaded. The Tribe's employment costs for Texas Hold'em tournaments is not the relevant consideration in calculating the security amount, as these costs are not losses the Tribe will suffer *due to the injunction*. The real issue is how the injunction would affect the Tribe's revenue, and any incidental costs that flow directly from being wrongfully enjoined. *See Sanofi-Synthelabo v. Apotex,* 470 F.3d 1368, 1385 (Fed. Cir. 2006) ("the court based its determination on evidence presented before the court that concerned [defendant's] potential lost profits, lost market share and associated costs of relaunch in the event of wrongful enjoinment"). The Tribe has given the Court no information on projected lost profits resulting from the injunction or any evidence of the profits generated from past Texas Hold'em tournaments. At most, the Tribe has provided conclusory statements that the Tribe benefited from the tournaments with overall increased revenues.

Without some factual basis, the Court cannot assume that, if not enjoined, the Texas Hold'em tournaments would have generated the revenue needed to cover the $175,000 in monthly employment expenses it claims. The Court does not believe it would be proper to require the State to post a bond to pay the salaries of employees

regardless of whether they will be temporarily laid off or moved to alternate employment, especially with no evidence that this revenue would have been generated in absence of the injunction.

The Court recognizes the importance of setting a security limit that would compensate the tribe for its losses were it found to be wrongfully enjoined. However, without evidence of those losses, any increase to the security would be based merely on the Court's speculation. Based on the record before it, the Court finds the current $20,000 security to be proper.

## ORDER

**IT IS ORDERED that** Defendant's Motion to Increase Security (Dkt. 49) is **DENIED**.

DATED: December 17, 2014

B. Lynn Winmill
Chief Judge
United States District Court